IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMANDA J. RAMSEY,                                    Case No. 3:16 CV 2208

      Plaintiff,

      v.                                               Magistrate Judge James R. Knepp, II

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.                                       MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Amanda J. Ramsey ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in March 2014, alleging a disability onset date of November 1, 2004.[1] (Tr. 61-70, 786-801).[2] Her claims were denied initially and upon reconsideration. (Tr.

---

1. In October 2015, Plaintiff amended her alleged onset date to May 22, 2014. (Tr. 159).
2. Plaintiff filed a previous application for DIB and SSI in May 2010, alleging disability as of November 2004. In October 2011, the claims were denied. (Tr. 39-50). While the *Drummond* rule seemingly applies in this case, and the ALJ noted its relevance (Tr. 19-20), neither party addresses the rule. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (holding the Commissioner is bound by its prior findings with regard to a claimant's residual functional capacity, unless new evidence or changed circumstances require a different finding). Pursuant to *Drummond*, the ALJ found Plaintiff had shown "new severe impairments" which warranted a new residual functional capacity assessment. (Tr. 19-20).

72-94, 803-21). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 95-96, 825-26). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 7, 2015. (Tr. 903-30). On November 5, 2015, the ALJ found Plaintiff not disabled in a written decision. (Tr. 16-35). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 7-11); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on September 2, 2016. (Doc. 1).

**FACTUAL BACKGROUND**

<u>Personal and Vocational Background</u>

Plaintiff was born in 1979 and has a GED. (Tr. 33, 907-08). She has past work experience as a fast food manager and nurse's aide. (Tr. 33).

*Plaintiff's Reports to the Agency*

In April 2014, Plaintiff reported she was caring for a friend's children for the week. (Tr. 176). She added she made breakfast for them. *Id.* In July 2014, Plaintiff reported she was unable to shop, cook, clean, do yard work, rarely watched television, had no hobbies, did not drive, had difficulty riding in a car with others, and had difficulty getting in and out of the shower. (Tr. 202).

*Plaintiff's Testimony*

Plaintiff testified she cared for her three-year-old son with help from her eleven-year-old daughter, her mother, and others. (Tr. 907, 919-20). Plaintiff testified she was able to drive for 30 to 45 minutes before needing to rest. (Tr. 908). She stated she was unable to work due to fibromyalgia and "not wanting to leave [her] house." *Id.* ("I just get scared of going out in public and talking to people."). She estimated she could walk one city block before experiencing back and leg pain, and stand or sit for 30 to 45 minutes at one time. (Tr. 909). Plaintiff stated she did

not believe she currently had any lifting restriction from any treating doctors. (Tr. 909). She added that several months prior she was limited to lifting ten pounds overhead for three months following a "flare-up" after which she "ended up in the hospital with the fibromyalgia mimicking a heart attack." (Tr. 909-10). She stated she had a "flare-up" approximately every two months. (Tr. 920). At the time of the hearing, Plaintiff did not lift more than fifteen pounds. (Tr. 910). Plaintiff testified she had to lie down for eight hours a day, "on and off" due to back, hip, neck, and shoulder pain. (Tr. 914). She had difficulty getting out of the bathtub, but "no problem showering." (Tr. 911). She also stated she had no problems cooking, doing dishes for 30 minutes, dusting, vacuuming (but it was limited to one rug in her home, *see* Tr. 915), and putting clothes in the washer. (Tr. 911-12). She received help from her daughter getting laundry out of the dryer, sweeping, mopping, and taking out the trash. (Tr. 912). Her hobbies included painting, which now took her longer, and she stated she was no longer able to ride a bike. *Id.* She was also no longer able to perform past volunteer work because of difficulty sitting for the required period and bending over to perform filing. (Tr. 913).

<u>Relevant Medical Evidence</u>

Plaintiff went to the emergency room in May 2014 complaining of back pain after she picked up a box and "twisted". (Tr. 498). She reported "she ha[d] been doing repetitive light lifting and bending and twisting recently." *Id.* Plaintiff denied numbness, weakness, or radiation of pain. *Id.* An examination revealed "moderate right upper lumbar tenderness with slight upper midline tenderness [ ]" but no deformity, "normal reflexes and normal extensor hallucis longus function [ ]", and a negative straight leg raise test. (Tr. 500). David Baehren, M.D., diagnosed Plaintiff with a lumbar sprain, prescribed Norco, and advised her to perform back exercises. *Id.*

Later that month, Plaintiff had an appointment with Chris Park, M.D., for follow up of her back pain, which was "improving" and "relieved by pain meds/drugs". (Tr. 553-57). An examination revealed she had a normal gait, normal straight leg raise test, normal strength in her lower extremity, no edema, normal thoracic and lumbar spine range of motion, and thoracic and lumbar spine tenderness. (Tr. 556). Dr. Park assessed her with chronic back pain. *Id.* X-rays of the lumbar and thoracic spine at that time showed "[m]inor degenerative changes". (Tr. 569-70).

Plaintiff went to the emergency room in July 2014, complaining of back pain, and stating she had run out of pain medication and it was not due to be refilled for five days. (Tr. 505). A physical examination showed "reproducible pain to left thoracic region" and "slight decrease [range of motion] with flexion and left lateral [range of motion]". (Tr. 507). The treatment providers assessed her with "back pain", which was "improved" and "stable". (Tr. 508). An x-ray of Plaintiff's right hip showed "mild degenerative features". (Tr. 529). At a follow-up with Dr. Park, Plaintiff's upper back pain was "much better", but she complained of worsening right hip pain. (Tr. 549). An examination showed right hip tenderness and mild pain with motion. (Tr. 551). Her cervical, thoracic, and lumbar spine were all normal. *Id.*

Plaintiff first saw rheumatology specialist, Saud A. Alvi, M.D., in August 2014. (Tr. 575). She complained of pain in multiple joints, but most severe in her low back and hips. *Id.* Plaintiff stated that she did not formally exercise, but as the mother of a toddler and "stay-at-home mom", she was "very active." *Id.* An examination showed "tender points", but a normal gait and station. (Tr. 577). Dr. Alvi assessed her with hip pain, low back pain, and myositis. (Tr. 578).

At an appointment in late August 2014, Plaintiff had tender points, but a normal gait and station. (Tr. 581). In her cervical spine, she had tenderness, paraspinus muscle spasm, and limited range of motion to flexion, extension, and lateral bending and rotation. *Id.* Plaintiff had normal

lumbosacral spine movements and tenderness. *Id.* In her right hip, she had tenderness, trochanteric bursal tenderness, and pain with range of motion. *Id.* Dr. Alvi assessed her with fibromyalgia and degenerative joint disease. (Tr. 582). Dr. Alvi continued the pain medication, and instructed her to continue exercises, lose weight, and quit smoking. *Id.*

Plaintiff saw Dr. Alvi again in September 2014, and reported she experienced "good days" and "bad days". (Tr. 747). She reported her pain improved with exercises and stretching. *Id.* Plaintiff stated she was "very active", but also "very stiff" and had "difficulties with activities of daily living." *Id.* She had tender points, but a normal gait and station. (Tr. 749). Dr. Alvi again noted Plaintiff "has fibromyalgia and degenerative joint disease." (Tr. 750). He also administered injections to Plaintiff's hips for trochanteric bursitis, and continued her pain medication. *Id.* Dr. Alvi advised Plaintiff to continue exercises, lose weight, quit smoking, and follow up in three to four months. *Id.*

In January 2015, Plaintiff followed up with Dr. Alvi and reported she "felt good" after the hip injections, and while her left hip remained "good", she was beginning to experience right hip pain again. (Tr. 751). She stated she had been travelling to the Cleveland Clinic to visit an aunt. *Id.* Dr. Alvi noted "[n]one of her joints have been red, hot or swollen." *Id.* Dr. Alvi administered steroid injections in both hips. (Tr. 754).

In April 2015, Plaintiff complained of fatigue to Dr. Alvi. (Tr. 756). She reported the injections helped and while her left hip felt good, she was experiencing returning pain in her right hip. *Id.* She also complained of pain in her shoulders and low back. *Id.* Plaintiff had tender points and a normal gait and station. (Tr. 758). Dr. Alvi administered hip injections and continued to recommend the same treatment plan. (Tr. 759).

In June 2015, Plaintiff tested negative for Xanax, which she had been prescribed for anxiety, and positive for Oxycodone, which she had not been prescribed. (Tr. 780-81).

At an appointment with Dr. Alvi in August 2015, Plaintiff complained of hip, right knee, and right ankle pain. (Tr. 762). She reported fatigue, lack of energy, and difficulty with activities of daily living and sleeping. (Tr. 762). She had lost four pounds even though she had not been able to exercise, but continued to smoke. *Id.* She again had tender points but a normal gait and station, and received hip injections. (Tr. 764-65).

Opinion Evidence[3]

*Dr. Alvi*

In August 2015, Dr. Alvi provided a physical medical source statement. (Tr. 744-45). He determined that in an eight-hour workday Plaintiff could: stand and walk for sixty minutes (fifteen minutes at a time; sit for two hours (fifteen minutes at a time); occasionally lift at most five pounds; never reach, stoop/bend, or climb stairs; never work around hazardous machinery, or work in heat, cold or around pulmonary irritants; and occasionally balance, handle, walk on uneven ground, operate foot controls, and operate a motor vehicle. (Tr. 745). He added she would need to lie down one hour a day and elevate her legs one hour a day; and needed an assistive device to ambulate even minimally. *Id.* He stated Plaintiff had severe pain due to fibromyalgia, demonstrated by18/18

---

3. Neither party addresses the opinions of the state agency reviewers. *See* Tr. 61-85. As such, the undersigned intentionally omits these facts. Plaintiff has waived argument on issues not raised in his opening brief. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief are waived). Moreover, Plaintiff has also waived his numerous underdeveloped arguments. *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation omitted).

tender points, and bursitis. (Tr. 745). Dr. Alvi added medication side effects, including drowsiness and dizziness, would interfere with work performance. *Id.*

VE Testimony

The VE testified a hypothetical individual of Plaintiff's age, education, and work experience, and with the limitations in the ALJ's ultimate RFC, could perform other work in the national economy. (Tr. 922-29).

ALJ Decision

On November 5, 2015, the ALJ issued a written decision with the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since her amended alleged onset date of May 22, 2014.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; trochanteric bursitis; fibromyalgia; obesity; an affective disorder diagnosed as bipolar disorder; an anxiety disorder variously diagnosed as panic disorder with agoraphobia and posttraumatic stress disorder (PTSD); a personality disorder; and a substance abuse disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Postural limitation of no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Occasional balancing, stooping, kneeling, and crouching. No crawling. Occasional use of the bilateral lower extremities for operation of foot controls. Manipulative limitation of frequent use of the bilateral upper extremities for reaching, handling, and fingering. Environmental limitation to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with

few if any work place changes. Occasional interaction with the general public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in] . . . 1979 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2004, through the date of this decision.

(Tr. 22-34) (internal citations omitted).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

---

4. This is either typographical error, as Plaintiff would have been 35 years old on the amended onset date of disability, or the ALJ's failure to recognize Plaintiff's amended onset date of disability. Plaintiff only addresses the records from the amended onset date forward, *see* Doc. 16, at 3 n.1; therefore, the undersigned does the same. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief are waived).

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Plaintiff argues the ALJ erred in his: (1) analysis of Dr. Alvi's opinion; and (2) evaluation of Plaintiff's pain and other symptoms. (Doc. 21, at 10-19). The Commissioner responds the decision should be affirmed because the ALJ reasonably: (1) assessed medical opinion evidence relating to Plaintiff's physical functioning; and (2) found Plaintiff's subjective complaints unreliable. (Doc. 20, at 6-16). For the reasons discussed below, the Court agrees with the Commissioner.

<u>Dr. Alvi's Opinion</u>

Plaintiff argues the ALJ "applied only a controlling weight standard" to the opinion and, thus, failed to provide good reasons for the weight assigned.[5] (Doc. 16, at 12-14). The Commissioner responds the ALJ's treating physician assessment is without error. (Doc. 20, at 6-11).

---

5. Within her treating physician argument, Plaintiff argues the ALJ "failed to consider the unique nature of fibromyalgia in assessing the opinion of Dr. Alvi." (Doc. 16, at 14). The ALJ found fibromyalgia as a severe impairment. (Tr. 22). Because the undersigned finds the ALJ's treating physician analysis was without err, and because an assessment of the limitations caused by fibromyalgia often times falls on a plaintiff's subjective complaints, that argument is addressed below, within the credibility discussion.

*Treating Physician Rule*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544.

When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of

the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

Here, the ALJ summarized Dr. Alvi's findings and then provided the following assessment of his opinion:

> The opinion of a treating physician is entitled to controlling weight when supported by objective medical evidence and consistent with other substantial evidence of record (20 CFR 404.1527(d)(2) and 416.927(d)(2); SSR 96-2p). However, Dr. Alvi's opinion is not entitled to controlling weight because there is persuasive contradictory evidence. While Dr. Alvi states the claimant cannot sit more than 15 minutes at a time or a total of two hours in a workday, there is evidence that the claimant traveled to Cleveland Clinic to visit an ailing relative. The trip takes greater than two hours. She was also able to sit through the entire hearing, which was greater than 15 minutes. Further, Dr. Alvi states the claimant requires an assistive device and limited her to walking no more than 15 minutes at a time. However, his own treatment notes have continually documented normal gait. This is not consistent with such limitations. Such extreme limitations as never reaching, stooping, or bending are also inconsistent with the claimant's daily activity of caring for her three-year-old son. The opinion of Dr. Alvi is given little weight because it is not consistent with the clinical signs documented in his own treatment notes or the claimant's reported activities of daily living.

(Tr. 31).

First, the undersigned finds the ALJ provided "good reasons" for failing to give Dr. Alvi's opinion controlling weight. He stated the opinion was inconsistent with other record evidence. Specifically, the ALJ noted Dr. Alvi's opinion Plaintiff could not sit for more than fifteen minutes at a time was inconsistent with evidence she traveled in a car to another city and the fact that she sat without incident through the hearing, which also lasted longer than fifteen minutes. (Tr. 31); *see* Tr. 751, 905, 907, 930. Plaintiff argues she experiences "good" and "bad" days and cites to her

own statement that her symptoms varied (Doc. 16, at 16) (citing Tr. 747) [6], but does not point to any statement in Dr. Alvi's opinion that his limitations were not constant, but rather varied daily. She also argues that the ALJ failed to determine where she drove herself to Cleveland and/or stopped along the way. (Doc. 16, at 16). However, regardless of whether she drove herself or stopped for breaks, the fact that she traveled in a car, in a seated position, for more than two hours is inconsistent with Dr. Alvi's opinion she could sit for two hours at most per workday. Even so, this is just one reason the ALJ provided for discounting the opinion.

The ALJ added that Dr. Alvi's opinion Plaintiff would require an assistive device and be limited to walking no more than fifteen minutes at a time was inconsistent with his contemporaneous treatment notes, which "continually document normal gait." (Tr. 31); *see* Tr. 556, 577, 581, 749, 753, 758, 764. Discounting a treating physician's opinion based on inconsistent contemporaneous treatment notes is appropriate. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) (finding treating physician rule not violated in part where: "the record also supports the ALJ's conclusion that [the treating physician's] opinion was inconsistent with his own prior assessments and treatment notes"); *Jackson v. Comm'r of Soc. Sec.*, 2016 WL 1211425, *6 (W.D. Mich.) ("This statement was inconsistent with . . . contemporaneous treatment notes that stated Plaintiff was 'doing very well' and was 'alert, cooperative, and oriented' with satisfactory memory.").

Finally, the ALJ noted Dr. Alvi's "extreme limitations" of never being able to reach, stoop, or bend were inconsistent with evidence Plaintiff cared for her young child, albeit with help. (Tr. 31); *see* Tr. 744. While the undersigned notes, as did the ALJ (Tr. 24), that Plaintiff did receive

---

6. And for the reasons discussed below, the undersigned finds the ALJ's credibility analysis without error.

help caring for her children, Dr. Alvi's opinion that she could never reach, stoop, or bend is inconsistent with evidence of record. *See* Tr. 176 (Plaintiff's report to the agency she cared for multiple children, including a friend's child, the week prior); Tr. 575, 579, 747, 751, 756, 762 (Dr. Alvi's treatment notes indicating that as the mother of a toddler, she did not formally exercise but was "very active"). These reasons speak to the factors of the supportability of the opinion and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See Winningham v. Colvin*, 2014 WL 2920011, at *19 (M.D. Tenn.) (affirming ALJ's explanation provided "good reasons" where ALJ focused on the factors of supportability and substantial evidence supports her decision); *Stafford v. Astrue*, 2011 WL 4481016, at *13 (M.D. Tenn), *report and recommendation adopted*, 2011 WL 4479840 (M.D. Tenn.) (similar findings). Thus, the undersigned concludes the ALJ provided "good reasons" for failing to give Dr. Alvi's opinion controlling weight.

Second, Plaintiff's contention the ALJ "expressly applied only the controlling weight standard and did not consider the factors in the regulations to determine whether the opinion still deserved significant weight" (Doc. 16, at 1), is not well-taken. Plaintiff posits that the ALJ must first determine whether the opinion is due controlling weight, and then secondly perform a substantially similar analysis to determine whether the opinion is entitled "significant" weight. When an ALJ determines a treating physician's opinion is not entitled to controlling weight, as was the case here, he must provide support to refute either the opinion's objective basis or its consistency with other record evidence. *Gayheart*, 710 F.3d at 376-77. Here, the ALJ focused on the second prong—consistency with the other record evidence. *See* Tr. 31. The ALJ summarized the record evidence, specifically mentioning Dr. Alvi's records, and noting the inconsistencies. No more was required for the decision not to give the opinion controlling weight, nor to justify the

weight given to the opinion. *See, e.g.*, *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 558 (N.D. Ohio 2014) ("[W]here the ALJ carefully summarized the results of the claimant's objective medical records, as well as noting the daily activities of the claimant, and then showed why the opinion of the treating source was inconsistent with these facts, the decision to accord the opinion of the treating source 'not much weight' was supported by substantial evidence and not violative of *Gayheart*.") (citing *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014)).

Thus, the ALJ appropriately provided good reasons for not giving the opinion controlling weight, and expressly assigned weight to the opinion as required by the regulations. *See* Tr. 31 ("The opinion of Dr. Alvi is given little weight because it is not consistent with the clinical signs documented in his own treatment notes or the claimant's reported activities of daily living."); 20 C.F.R. §§ 404.1527, 416.927. The ALJ's reasons were "sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544. The ALJ's opinion addressed the consistency and supportability of the opinion. *See Henke v. Astrue*, 498 F. App'x 636, 640, n.3 (7th Cir. 2012); *Benneman v. Comm'r of Soc. Sec.*, 2012 WL 5384974, at *1 (N.D. Ohio).

Credibility/Subjective Complaints

Plaintiff next argues the ALJ erred in his assessment of Plaintiff's pain and "other symptoms." (Doc. 16, at 17). The Commissioner responds the ALJ reasonably determined Plaintiff's subjective complaints were unreliable. (Doc. 20, at 12-16).

The Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other

symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800-01 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

A claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). In determining whether a claimant has disabling pain, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL 374186, at *3 ("20 CFR . . . 416.929(c) describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical

evidence when assessing the credibility of an individual's statements").[7] Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Roberts v. Astrue*, 2010 WL 2342492, at *11 (N.D. Ohio).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. An ALJ's finding that a claimant's subjective allegations are not fully supported is a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted). Nevertheless, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any

_____

7. Subsequent to the date of the ALJ's decision, the Social Security Administration issued new Social Security Ruling 16-3p, which supersedes Social Security Ruling 96-7p. The Sixth Circuit characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). The Social Security Administration has stated SSR 16-3p is not to be applied retroactively. 82 Fed. Reg. 49462, 49468 n.27 (Oct. 25, 2017), available at https://www.gpo.gov/fdsys/pkg/FR-2017-10-25/pdf/2017-23143.pdf.

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

*Fibromyalgia*

Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers*, 486 F.3d at 244 n.3 (quoting Stedman's Medical Dictionary for Health Professionals and Nursing, 542 (5th ed. 2005)); *see also* SSR 12-2p, 2012 WL 3104869, at *2 (fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months"). Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Preston*, 854 F.3d at 818.

This makes the credibility determination particularly relevant where a claimant has been diagnosed with fibromyalgia. "Opinions that focus solely upon objective evidence are not particularly relevant" due to "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia." *Rogers*, 486 F.3d at 245. Cases involving fibromyalgia "place[] a premium . . . on the assessment of the claimant's credibility." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). This is so because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. "Nonetheless, a diagnosis of fibromyalgia does not automatically entitle

18

[a claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). "Some people may have a severe case of fibromyalgia as to be totally disabled form working but most do not, and the question is whether claimant is one of the minority." *Id.* at 806.

"The Sixth Circuit has issued strong opinions on this point, in one case reversing a district court's decision to affirm the ALJ's denial because of the ALJ's undue emphasis on the lack of objective evidence." *Cooper v. Comm'r of Soc. Sec.*, 2014 WL 4606010, at *16 (E.D. Mich.) (citing *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011)) ("[T]he ALJ's rejection of the treating physicians' opinions as unsupported by objective evidence in the record obviously stems from his fundamental misunderstanding of the nature of fibromyalgia.").

Social Security Ruling 12-2, Evaluation of Fibromyalgia, "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims . . . ." SSR 12-2p, 2012 WL 3104869, at *1. The Ruling also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for disability. *Id.* at *5-6.

Here, Plaintiff alleges the ALJ erred in: (1) stating throughout the opinion that the clinical findings were inconsistent with Dr. Alvi's treatment notes and his conservative treatment (Doc. 16, at 14) (citing Tr. 28-31); (2) his determination that objective record evidence did not support Plaintiff's allegations of disabling pain because fibromyalgia "typically has no objective medical evidence and the objective evidence does not correlate well with symptoms.[ ]" (Doc. 16, at 18); (3) "overstat[ing]" Plaintiff's daily activities (Doc. 16, at 18-19); and (4) failing to consider the record as a whole when addressing Plaintiff's missed appointment. (Doc. 16, at 19).

First, the ALJ noted there was evidence in the record of drug-seeking behavior. (Tr. 27, 29-30). This is supported by the record. The ALJ specifically noted: in April 2013, Dr. Angela

Best refused Plaintiff's request for Xanax (Tr. 27) (citing Tr. 698); in July 2013, Plaintiff was prescribed Vicodin for right elbow pain and then three weeks later prescribed Vicodin again for a muscle strain (Tr. 27) (citing Tr. 313, 459-60)[8]; and in June 2015, Plaintiff tested negative for Xanax, which she had been prescribed for anxiety, and positive for Oxycodone, which she had not been prescribed (Tr. 279-30) (citing Tr. 773, 777-81). In fact, at the hearing, Plaintiff admitted to struggling with drug abuse in the past. *See* Tr. 916 ("I used to be addicted to drugs."). An ALJ can appropriately consider evidence of drug-seeking behavior in his credibility assessment. *Randolph v. Colvin*, 2016 WL 1626949, at *11 (N.D. Ohio) (collecting cases).

Second, the ALJ noted the objective findings in the record did not support Plaintiff's extreme subjective complaints. (Tr. 26-27). Indeed, this issue becomes more complex due to Plaintiff's fibromyalgia diagnosis, which often does not manifest with objective findings. *Rogers*, 486 F.3d at 243. Still, a diagnosis of fibromyalgia alone is not disability determinative. *Vance*, 260 F. App'x at 806; *see also, e.g., McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *5 (6th Cir.) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). In this case, the ALJ adequately considered the entire record, including Plaintiff's fibromyalgia and determined she was able to perform work. (Tr. 25-33); *see* 20 C.F.R. §§ 404.1527(d); 416.927(d) (an individual's ultimate ability to work is an issue reserved to the Commissioner). Furthermore, the ALJ found Plaintiff had additional severe physical impairments, including degenerative disc disease of the lumbar spine and trochanteric bursitis. (Tr. 22). He noted the objective findings did not support Plaintiff's severe complaints with regard to these impairments as well. *See* Tr. 28, 30 (citing Tr. 527-29, 578) (May 2014 x-rays showing mild degeneration in the lumbar and thoracic spine, and

---

8. Plaintiff does not address records before 2014 in her brief. *See* Doc. 16, at 3 n.1

hips). The ALJ also noted Plaintiff testified she was hospitalized several months prior to the hearing for fibromyalgia symptoms that "mimicked a heart attack", *see* Tr. 909-10, there was no evidence in the record to support this claim. (Tr. 30). Thus, the ALJ adequately considered the entire record, including Plaintiff's fibromyalgia, in determining her subjective complaints were not fully supported.

Third, the ALJ noted Plaintiff's severe subjective complaints were not consistent with Dr. Alvi's conservative treatment. (Tr. 28-30); *see* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). He noted at appointments in August 2014, September 2014, April 2015, and August 2015, Dr. Alvi prescribed her Motrin, Tramadol, and Tizanidine, provided hip injections, and advised at home exercises, weight loss, and quitting smoking. (Tr. 28-30) (citing Tr. 579-82, 747-50, 759, 762-65). The Sixth Circuit has relied upon a plaintiff's conservative treatment record to discount allegations of disability. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (finding no error in the ALJ's credibility assessment where plaintiff received conservative treatment); *see also McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4 (6th Cir.) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

Fourth, the ALJ appropriately cited Plaintiff's daily activities as an additional reason for discrediting her subjective complaints. (Tr. 30-31); *see* 20 C.F.R. § 404.1529(c)(3)(i); *see also Walters*, 127 F.3d at 532 ("An ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). The ALJ stated that in May 2013, during an emergency room visit, Plaintiff reported she had been doing carpentry work. (Tr. 27) (citing Tr. 413). He noted in April 2014, Plaintiff was caring for multiple children for a friend, and continued to be the primary caregiver for her three-year-old son, which kept her "very

active". (Tr. 30), *see* Tr. 176, 575, 579, 747, 751, 756, 762. The ALJ noted this was inconsistent with her testimony she had to lie down eight hours a day due to pain. (Tr. 30), *see* Tr. 914. The ALJ pointed out that in May 2014, Plaintiff admitted to repetitive lifting and bending. (Tr. 28) (citing Tr. 498-500). He also noted in July 2014, Plaintiff reported to the agency she did not vacuum or dust (Tr. 202) but, at the hearing, testified she did perform those chores (Tr. 912-15). Plaintiff asserts in July 2014 she was suffering from depression which prevented her from performing these tasks, which had improved by October 2015. (Doc. 16, at 18-19). The undersigned finds this explanation for discrediting Plaintiff is certainly not as strong as other reasons giving but, even so, it is just one of many reasons he provided. Also, Plaintiff's allegation that her mood improved enough to perform additional household chores offers additional support to the ALJ's RFC and ultimate determination she is able to perform work.

Finally, the ALJ noted Plaintiff failed to keep 20% of in-home and 50% of in-office mental health appointments, which he determined contrasted with her testimony that she rarely left home. (Tr. 31-32); *see* Tr. 908. It is certainly possible these facts contrast with her testimony, but the undersigned refrains from making such a determination here because the ALJ provided numerous other reasons for discrediting Plaintiff and it not the duty of the undersigned to reweigh the evidence. A reviewing court does not resolve conflicts in the evidence or render decisions regarding witness credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

For those reasons, the undersigned finds the ALJ adequately considered Plaintiff's subjective complaints throughout the opinion, addressing specific inconsistencies to support his conclusion that Plaintiff's subjective complaints were not fully supported by the record. *See generally* Tr. 22-33. SSR 96-7p, 1996 WL 374186, at *2.

RFC Determination

Within her first argument, Plaintiff asserts that because the ALJ failed in his analysis of Dr. Alvi's opinion, the RFC is flawed. (Doc. 16, at 10-16). The Commissioner responds the RFC is supported by substantial evidence and the decision should be affirmed. (Doc. 20, at 8, 20).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician.").

Having reviewed the entire record, and—as discussed above—finding no error in the ALJ's treating physician or subjective complaint determinations, the undersigned also finds the RFC supported by substantial evidence.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI supported by substantial evidence and affirms that decision.

 s/James R. Knepp II
United States Magistrate Judge